| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER JON ANDREWS,<br><br>Defendant. | Criminal No. 12-177 (JRT/JSM)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

John E. Kokkinen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Christopher Jon Andrews, No. 16556-041, Federal Prison Camp-Duluth, P.O. Box 1000, Duluth, MN 55814, *pro se* defendant.

In April 2013, Defendant Christopher Jon Andrews pled guilty to one-count in an indictment that charged him with Conspiring to Commit Mortgage Fraud pursuant to 18 U.S.C. §§ 1341, 1343. The Court originally entered judgment on December 13, 2013, imposing a sentence of 72-months' imprisonment. On October 28, 2014, the Court amended the judgment to specify restitution amounts. Andrews did not file a direct appeal. Andrews has now filed two motions: (1) a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255; and (2) a motion to reduce his sentence – arguably under 18 U.S.C. § 3582(c)(2). For the reasons set forth in detail below, the Court will deny both motions.

## BACKGROUND

In August 2012, a superseding indictment was returned charging Andrews with eight counts: Conspiracy to Commit Mortgage Fraud pursuant to 18 U.S.C. §§ 1341, 1343 (Count I); Mortgage Fraud Through Interstate Wire pursuant to 18 U.S.C. §§ 2, 1343 (Counts II-V); and Mortgage Fraud Through Mail pursuant to 18 U.S.C. §§ 2, 1341 (Counts VI-VIII). (Superseding Indictment, Aug. 6, 2012, Docket No. 30.) In April 2013, Andrews signed a plea agreement with the Government and pled guilty to Count I in the superseding indictment. (Ct. Mins., Apr. 24, 2013, Docket No. 49; Plea Agreement and Sentencing Stipulation ("Plea Agreement"), Apr. 24, 2013, Docket No. 50.)

As part of the plea, Andrews agreed the government could prove "beyond a reasonable doubt . . . [that] [f]rom at least November 2006 through in or about 2008 . . . [Andrews] engaged in a scheme to defraud mortgage loan lenders." (Plea Agreement at 1.) Andrews admitted that, as part of the fraudulent scheme, Andrews "prepared and arranged for the preparation of purchase agreements by licensed real estate agents" and "arranged for buyers to use certain mortgage loan brokers." (*Id.* at 2-3.) Andrews later told a probation officer that he "knew that the purchase agreements would be provided to the lenders and further knew that, in some transactions, they concealed material facts and contained materially false information." (Presentence Investigation Report ("PSR") at 6 (on file with the Court).) Andrews further acknowledged that he "knew that mortgage brokers would arrange for lenders to finance the transaction at [a] higher purchase agreement sales price instead of the price [the] buyers were actually paying." (*Id.* at 7.)

And Andrews disclosed that if he had used a realtor other than his wife, the realtor would have advised Andrews to disclose the actual purchase price. (*Id.*)

Prior to sentencing, a probation officer prepared the PSR. (*Id.* at F.2.) The PSR recommended: (1) a two-level enhancement for deriving more than $1 million in gross-receipts pursuant to U.S.S.G. § 2B1.1(b)(15)(A) ("gross-receipts enhancement"); (2) a four-level enhancement for the number of victims pursuant to U.S.S.G. § 2B1.1(b)(2) ("number-of-victims enhancement"); (3) a twenty-level enhancement for a loss amount exceeding $7 million pursuant to U.S.S.G. § 2B1.1(b)(1) ("loss-amount enhancement"); (4) a two-level enhancement for use of sophisticated means pursuant to U.S.S.G. § 2B1.1(b)(10)(C) ("sophisticated-means enhancement"); and (5) a four-level enhancement for Andrews' role as an organizer or leader pursuant to U.S.S.G. § 3B1.1(a) ("role-in-offense enhancement"). (*Id.* at 8-9.) The PSR advised that Andrews' Total Offense Level was 36 and, with a Criminal History Category of I, the advisory Guidelines range was 188 to 235 months' imprisonment. (*Id.* at 15.)

After completion of the PSR, Andrews and the government contested certain enhancements. The government objected to the gross-receipts and number-of-victims enhancements; Andrews contested all of the enhancements. (*See* Def.'s Position on Sentencing ("Def.'s Sent'g Position"), Oct. 7, 2013, Docket No. 60; Government's Position on Sentencing, Oct. 7, 2013, Docket No. 59.) With regard to the loss-amount enhancement, Andrews argued certain transactions should not be counted because Andrews justifiably relied "in good faith on expert advice" from a real estate agent and a real estate broker. (Def.'s Sent'g Position at 2-3, 6-9.) Andrews also argued against the

sophisticated-means enhancement, contending certain LLCs were formed for an innocent purpose and used at the direction of a real estate professional. (*Id.* at 13.)

The Court held a two-day evidentiary hearing in November 2013 regarding the objections to the PSR. (Ct. Mins., Nov. 7, 2013, Docket No. 70; Ct. Mins., Nov. 22, 2013, Docket No. 74.) At the hearing, Andrews presented evidence that certain transactions should not be counted toward the loss-amount enhancement because Andrews relied upon the advice of real estate professionals in the structure of the real estate transactions. (*See* Def.'s Post-Hr'g Mem. of Law at 31-35, Dec. 9, 2013, Docket No. 76.) Andrews again objected to the sophisticated-means enhancement, arguing that the use of an LLC was not "especially complex or especially intricate" such that an enhancement under the Guidelines was warranted. (*Id.* at 39 (quoting U.S.S.G. § 2B1.1, cmt. n.9(b)).)

After reviewing the evidence and position papers from both the government and Andrews, the Court held a final sentencing hearing on December 13, 2013. (Ct. Mins., Dec. 13, 2013, Docket No. 78.) The Court declined to apply a two-level increase for the gross-receipts enhancement and reduced the four-level increase for the number-of-victims enhancement to a two-level increase. But the Court found the government met its burden and applied the loss-amount enhancement, sophisticated-means enhancement, and role-in-offense enhancement for a Total Offense Level of 32. (*See* Statement of Reasons at 1, Dec. 23, 2013, Docket No. 80.) With a Criminal History Category of I, the advisory Guidelines range for Andrews' crime was 121 to 151 months' imprisonment. (*Id.*) The Court varied below the advisory Guidelines range to 72-months' imprisonment, taking

into account that "the scheme was not as shocking as other mortgage schemes" and that Andrews had "otherwise been law abiding." (*Id.* at 3.) The Court entered judgment on December 13, 2013, (*id.* at 4), but amended the judgment on October 28, 2014 to specify restitution amounts, (Am. J. in a Criminal Case, Oct. 28, 2014, Docket No. 87).

Even though the plea agreement did not preclude Andrews from filing a direct appeal regarding his sentence, (*see* Plea Agreement at 9), Andrews did not file a direct appeal. In June 2016, Andrews filed a *pro se* motion to reduce his sentence. In August 2016, Andrews filed a motion to vacate, set aside, or correct his sentence pursuant to section 2255.

## DISCUSSION

### I. MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Andrews filed a motion to vacate, set aside, or correct his sentence pursuant to section 2255. Andrews argues that his counsel was ineffective because counsel failed to discuss the possibility of a good-faith defense for reliance on professional advice, present evidence or objection to the sophisticated-means enhancement, and discuss Andrews' appeal options. The government responds that Andrews' section 2255 motion is untimely and, even if the motion were timely, Andrews' counsel was not ineffective. The Court will deny Andrews' section 2255 motion as untimely.

#### A. Standard of Review

Section 2255 provides a limited opportunity for federal prisoners to seek postconviction relief on the grounds that "the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

### B. Statute of Limitations

The government argues the Court should dismiss Andrews' section 2255 motion because Andrews filed the motion outside the one-year limitation period. Section 2255(f) provides that a one-year period of limitation applies to the filing of section 2255 motions. The one-year period runs from the latest of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, because the Court amended Andrews' sentence on October 28, 2014, and Andrews did not file a direct appeal, Andrews' conviction became final on November 11, 2014, when the fourteen-day period for filing a notice of appeal expired. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008); Fed. R. App. P. 4(b)(1)(A) (setting the fourteen-day time period for filing a notice of appeal); Fed. R. App. P. 26(a)(2) (articulating method for computing the fourteen-day time limit). Accordingly, to be timely under section 2255(f)(1), Andrews would have had to file his section 2255 motion by November 11, 2015. Because Andrews' August 2016 motion falls outside the deadline in section 2255(f)(1), Andrews must either show the motion period should be equitably tolled or satisfy a different provision in section 2255(f).

Andrews initially rebuts the government's assertion that the statute of limitations bars his section 2255 motion, arguing Andrews: (1) recently learned the plea agreement only affected Andrews' rights to file a direct appeal; and (2) could not timely complete the motion because of constraints placed on him while in prison. (Mot. to Vacate, Set Aside, or Correct a Sentence ("Mot. to Vacate") at 13, Aug. 11, 2016, Docket No. 108.) The Court construes these arguments as claims seeking equitable tolling. *United States v. Sellner*, 773 F.3d 927, 932 (8th Cir. 2014) ("A document filed *pro se* is to be liberally construed." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The limitation period in section 2255(f) may be equitably tolled if Andrews shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

First, Andrews argues the limitation period should be equitably tolled because Andrews "has recently be[en] advised that the plea agreement only affected [Andrews'] right to file a direct appeal." (Mot. to Vacate at 13.) Factually, Andrews' contention is belied by the record. Andrews' plea agreement directly states that the only right Andrews forfeited was his ability "to appeal the question of his **guilt** to a higher court." (Plea Agreement at 9 (emphasis added).) Further the Court explained to Andrews at the change of plea hearing on April 24, 2013 that, with regard to Andrews' appeal rights, his guilty plea **only** affected his "right to appeal [his] **conviction** to the Court of Appeals," and he retained the right to appeal his sentence. (Hr'g Tr. at 18:22-19:2, 22:12-15, 22:21-22, Aug. 15, 2016, Docket No. 111 (emphasis added).) Andrews acknowledged that he understood his appeal rights, including the right to file a direct appeal regarding his sentence. (*Id.* at 17:16-18:2, 19:3-4, 22:23.) Thus, the record shows that, at the time Andrews entered a guilty plea, Andrews understood the narrow scope of the appeal waiver in the plea agreement.

Further, even if the record supported Andrews' contention that he recently learned his plea agreement did not affect his right to file a section 2255 motion, Andrews cannot show extraordinary circumstances that warrant equitable tolling. As a general rule, "[i]neffective assistance of counsel, where it is due to an attorney's negligence or mistake, . . . [is not] considered an extraordinary circumstance" warranting equitable tolling. *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005). Here, Andrews alleges his attorney advised Andrews that he "did not have any issues to appeal" and "could not appeal his conviction and sentence based on the plea agreement." (Motion to

Vacate at 5, 13.) Even if both of Andrews' assertions were true, this kind of negligent or mistaken legal advice is not so "outrageous" or "extraordinary" to warrant equitable tolling. *See United States v. Steele*, No. 08-195, 2012 WL 2829449, at *2 (D. Minn. July 5, 2012) (noting ineffective assistance of counsel only supports equitable tolling when there are allegations of "deceit, misrepresentation, or other serious misconduct on the part of [the defendant's] attorney that prevented [the d]efendant from timely filing his [section] 2255 motion"). Therefore, the Court finds Andrews is not entitled to equitable tolling on the basis of his attorney's advice about the plea agreement.

Andrews makes a second argument for equitable tolling asserting constraints caused by incarceration prevented him from filing a timely section 2255 motion. While in some circumstances a "movant might be able to show how the conditions of his confinement constitute an extraordinary circumstance warranting the application of equitable tolling," *Muhammad*, 735 F.3d at 815, Andrews fails to demonstrate how incarceration alone prevented him from meeting the one-year statute of limitations. In fact, Andrews does not point to any impediment caused by his incarceration that is not faced by every incarcerated person. *See, e.g.*, *United States v. Lussier*, No. 06-366, 2013 WL 673752, at *4 (D. Minn. Feb. 25, 2013) (noting that impediments "common to many prisoners" do not support a finding of "extraordinary circumstance"). As such, Andrews' incarceration alone does not constitute an extraordinary circumstance warranting the application of equitable tolling.

In addition to his equitable tolling arguments, Andrews also argues the Supreme Court's decisions in *Lafler v. Cooper*, 566 U.S. 156 (2012), *Missouri v. Frye*, 566 U.S.

133 (2012), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), show that he is "entitled to relief without regards to the one-year statute of limitation[s]." (Mot. to Vacate at 13.) Section 2255(f)(3) provides that the statute of limitations can be tolled from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Based on the rule, even if these decisions announced a new rule of constitutional law made retroactive to cases on collateral review, Andrews' section 2255 motion would still be untimely. The cases cited by Andrews were decided on March 21, 2012 and June 17, 2013. *Lafler*, 566 U.S. at 156; *Frye*, 566 U.S. at 133; *Alleyne*, 133 S. Ct. at 2151. Thus, the one-year period under section 2255(f)(3) expired on March 21, 2013 and June 17, 2014. Andrews filed his section 2255 motion on August 11, 2016 – more than two years after limitation period ran for the most recent of the three cases.

Accordingly, Andrews' section 2255 motion is untimely and the Court will deny the motion on that ground.

## II. MOTION TO REDUCE SENTENCE

Andrews also filed a motion to reduce his sentence in light of the 2015 amendments to the loss tables in U.S.S.G. § 2B1.1. (Mot. to Reduce Sentence, June 13, 2016, Docket No. 107.) In some circumstances, "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o)" may petition the Court for a reduction. 18 U.S.C. § 3582(c)(2). But the Court's power to reduce a defendant's

sentence pursuant to section 3582(c)(2) depends not only on the Sentencing Commission's decision to amend the advisory Guidelines, but also on the decision "to make the amendment retroactive." *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Here, Andrews argues the 2015 amendments to the loss tables in section 2B1.1 warrant a twelve-month sentence reduction. But the Sentencing "Commission has not made retroactive the amendments on which [Andrews] wishes to rely." *United States v. Walker*, 818 F.3d 416, 424 (8th Cir. 2016) (interpreting the 2015 amendments to U.S.S.G. § 2B1.1). Further, even if the Court applied the 2015 amendments, the facts would still support a twenty-level increase for the loss-amount enhancement. The Court adopted the PSR's loss-amount calculation of over $14 million. (*See* Statement of Reasons at 1; PSR at 4.) Under the 2015 amendment to section 2B1.1, a twenty-level increase is appropriate when the loss amount exceeds $9.5 million. *See* U.S.S.G. § 2B1.1 (Nov. 1, 2015). Because Andrews caused a total loss amount in excess of $14 million, a twenty-level loss-amount enhancement would be applied under the 2015 amendments.

For these reasons, the Court will deny Andrews' motion to reduce his sentence.

## III. CERTIFICATE OF APPEALABILITY

The Court may grant a Certificate of Appealability only where the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must show that "the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994). For purposes of appeal

under section 2253(c)(2), the Court finds that Andrews has not shown that reasonable jurists would find the issues raised in Andrews' section 2255 motion debatable, that some other court would resolve the issues differently, or that the issues deserve further proceedings. Therefore, the Court declines to grant a Certificate of Appealability.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Christopher Jon Andrews' Motion to Vacate, Set Aside, or Correct Sentence [Docket No. 108] is **DENIED**.

2. Christopher Jon Andrews' Motion to Reduce Sentence [Docket No. 107] is **DENIED**.

3. For the purpose of appeal, the Court does **NOT** grant a Certificate of Appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 15, 2017             _____s/John R. Tunheim_____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                              Chief Judge
                                           United States District Court